IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

TANIESJA MITCHELL,                  *

    Plaintiff,                      *

vs.                                 *      CASE NO. 4:25-cv-160 (CDL)

GRAYSON DUTTON,                     *

    Defendant.                      *

O R D E R

Defendant Grayson Dutton, an officer with the Muscogee County Sheriff's Office, responded to a bar fight in downtown Columbus, Georgia.  After he helped clear the bar, Dutton was directed to an ongoing arrest outside, where two fellow officers were attempting to handcuff another individual.  As Dutton approached, Plaintiff Taniesja Mitchell and another woman stood immediately adjacent to the officers, and Mitchell's arm was extended toward one of the officers.  Dutton ordered Mitchell to back up before pushing her away from the officers, causing her to fall to the pavement. Mitchell was not arrested and was later transported to the hospital for evaluation.  She subsequently filed this action, asserting a claim under 42 U.S.C. § 1983 for alleged violations of her Fourth Amendment rights and related state law claims against Dutton.  Now pending before the Court is Dutton's motion for summary judgment (ECF No. 13).  For the reasons that follow, the Court grants the

motion as to Mitchell's Fourth Amendment claim.  The Court declines to exercise supplemental jurisdiction over Mitchell's remaining state law claims, and those claims are dismissed without prejudice.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

## FACTUAL BACKGROUND

Viewed in the light most favorable to Mitchell, the record reveals the following facts.

In December 2024, Plaintiff Taniesja Mitchell and her husband attended a company Christmas party and celebrated her husband's birthday in downtown Columbus, Georgia.  After the party, they went to a nearby bar, where a large fight broke out.  Although Mitchell's husband was involved in the altercation, Mitchell

2

testified that she does not recall being struck or pushed while inside the bar.  Mitchell Dep. 52:12-16, ECF No. 13-5.

Defendant Grayson Dutton and other officers with the Muscogee County Sheriff's Office were assigned to patrol the downtown area that evening as part of the Uptown Columbus law enforcement detail. After the fight began, Dutton and other officers were called to de-escalate the situation and direct patrons outside.  As patrons, including Mitchell and her husband, exited the bar, approximately twenty to thirty individuals gathered on the sidewalk outside. Dutton Body Cam Video at 07:02-07:17 (Dec. 14, 2024) (on file with the Court as Axon_Body_3_Video_2024-12-14_0016_X60A Cpl. Dutton).

Outside the bar, two other officers, Keron Batson and Sherman Hayes, had handcuffed Mitchell's husband and were speaking with him when an unidentified male collided with nearby tables and chairs.  Batson Body Cam Video at 05:10-05:45; 06:15-06:26 (Dec. 14, 2024) (on file with the Court as VIDEO - WQ901B0536_1075_12142024001728).  Batson identified himself as an officer and attempted to detain the individual. *Id.* at 06:30-34. The body camera footage shows the individual questioning Batson's authority, while the individual's father intervened by placing himself over his son and urging Batson to let him take care of his son.  *Id.* at 06:31-07:00.  Batson warned that he would deploy his taser, and Officer Hayes assisted in attempting to secure the

individual while repeatedly directing the father to move away from his son.  *Id.*

As Batson and Hayes attempted to handcuff the individual, Mitchell and another woman moved toward the officers while speaking to them.  *Id.* at 7:01-07:10.  Batson shouted at the women to "back up now," and Hayes warned them that they could not interfere with the arrest.  *Id.* at 07:06-07:15.  Neither Mitchell nor the other woman immediately retreated.  *Id.*

While these events unfolded, Dutton exited the bar to check on the officers outside.  As he descended the steps to go outside, two individuals informed him that a struggle was ongoing and pointed in the direction of the scene of the arrest.  Dutton Body Cam Video at 06:57-07:03.  As Dutton walked outside, several people were gathered on the sidewalk, including Mitchell's husband seated in handcuffs.  *Id.* at 07:04-07:12.  Another individual directed him to the ongoing arrest.  *Id.*  When Dutton arrived, multiple bystanders had gathered around Batson and Hayes watching them as they attempted to complete the arrest.  *Id.* at 07:13-07:16. Mitchell and the other woman were standing immediately adjacent to the officers and the individual being arrested.  *Id.*  Dutton's body camera footage depicts Mitchell extending her arm toward Officer Hayes during the encounter, although the parties dispute whether Mitchell made physical contact with Hayes or his vest. *Id.* at 07:17-18.  As Dutton approached the scene, he ordered

4

Mitchell to "back up." *Id.* Approximately one second later, while ordering her to back up again, Dutton pushed Mitchell from behind with both hands, causing her to propel forward onto the pavement. *Id.* at 07:18-07:22. Dutton then immediately turned his attention back to assisting Batson and Hayes in securing the individual. *Id.* at 07:23-07:37. Officer Hayes later testified that someone was tugging on his vest during the arrest and that Dutton's intervention ended the interference. Hayes Dep. 29:23-30:16, ECF No. 13-8.

After the individual was handcuffed, Dutton and Batson approached Mitchell, who was still lying prone on the sidewalk. Dutton instructed Mitchell to get up and stated, "when police start putting hands on people, you don't touch police," then walked away. Dutton Body Cam Video at 07:37-07:43. Less than one minute later, Dutton returned, told Mitchell to sit up and get some air, and asked whether she wanted an ambulance. *Id.* at 08:26-08:36. Mitchell responded that she did and told Dutton to leave her alone. *Id.* Dutton replied, "alright, cool, sit there," and walked away. *Id.* Dutton testified that he considered the situation "over and done with" and had other law enforcement duties to attend to. Dutton Dep. 59:24-60:11, ECF No. 13-7. Neither Dutton nor any other law enforcement officer arrested Mitchell.

Mitchell was transported by ambulance to a local hospital, where she received an IV and was discharged several hours later

with diagnoses of acute alcohol intoxication and multiple contusions.  Def.'s Mot. for Summ. J. Ex. H, Piedmont Medical Records 86, ECF No. 13-11.  She had no fractures or structural bone issues, but reported bruising to her face, abrasions, a cut on her thumb, pain in her back and right knee, and swelling around one eye.  Mitchell testified that she does not remember the events beginning when patrons were removed from the bar until she arrived at the hospital.

DISCUSSION

Mitchell brought this action under 42 U.S.C. § 1983, asserting that Officer Dutton violated her Fourth Amendment right to be free from the use of excessive force, as well as state law claims against Dutton.  Pending before the Court is Dutton's motion for summary judgment on all claims.  The Court addresses each claim in turn.

## I.    Fourth Amendment Claim

Mitchell claims that Dutton unlawfully seized her in violation of the Fourth Amendment.  Dutton argues that his use of force did not constitute a seizure within the meaning of the Fourth Amendment because he did not apply force with the intent to restrain Mitchell.  The Court agrees.

The Fourth Amendment provides a "right of the people to be secure in their persons . . . against unreasonable . . . seizures." U.S. Const. amend. IV.  "[T]wo things are necessary for a Fourth

6

Amendment seizure: '(1)the use of force *with* (2) *intent to restrain*.'" *Watkins v. Davis,* 156 F.4th 1084, 1099 (11th Cir. 2026) (quoting *Torres v. Madrid*, 592 U.S. 306, 317 (2021)).  In assessing whether Dutton intended to restrain Mitchell, the Court must determine "whether the challenged conduct *objectively* manifests an intent to restrain."  *Id.* at 1102. (quoting *Torres*, 592 U.S. at 317).  While the amount of force used remains pertinent to that inquiry, "force intentionally applied for some other purpose" does not constitute a Fourth Amendment seizure.  *Torres*, 592 U.S. at 317.

Mitchell contends that the force Dutton used when pushing her objectively indicated an intent to restrain her.  Although the amount of force Dutton used is relevant to the intent inquiry, the surrounding circumstances demonstrate that Dutton pushed Mitchell for a different purpose.

The undisputed evidence establishes that as Officers Batson and Hayes struggled to handcuff another individual, Mitchell and another woman moved toward the officers despite repeated commands to back up.  As Dutton approached the ongoing arrest, body-camera footage depicts Mitchell standing immediately adjacent to Officer Hayes with her arm extended toward him.  After ordering Mitchell to back up, Dutton pushed her away from the officers, causing her to fall to the pavement.  Immediately after the push, Dutton turned his attention back to assisting Batson and Hayes in completing the

arrest.  He did not remain with Mitchell, direct her movements, attempt to detain her, place her under arrest, or otherwise exercise additional physical control over her.  Instead, after the arrest had concluded, Dutton returned to Mitchell, admonished her for touching the officers during the arrest, asked whether she needed medical assistance, and then left to attend to other matters.

Viewed objectively, Dutton's conduct manifested an intent to create distance between Mitchell and officers engaged in an active arrest—not an intent to restrain her.  Although Dutton intentionally applied force, the surrounding circumstances demonstrate that the force was applied "for some other purpose," namely, to remove Mitchell from the immediate vicinity of an ongoing arrest so that the officers could secure the suspect.  *See Pinto v. Collier Cnty.*, 2022 WL 2289171, at *4 n.7 (11th Cir. June 24, 2022) (per curiam) (quoting *Torres*, 592 U.S. at 317) (noting that an officer did not seize an individual by pushing him because the force was applied to prevent the escalation of an altercation between two men outside of a bar, not to restrain the individual's movement).  Because Dutton did not apply force with the objective intent to restrain Mitchell, no Fourth Amendment seizure occurred.

Even if Mitchell could show a seizure, she did not demonstrate that Dutton's conduct violated clearly established law.  "Clearly established means that, at the time of the officer's conduct, the

law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Edwards v. Grubbs,* 179 F.4th 909, 927 (11th Cir. 2026) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)).  A constitutional right may be clearly established through "(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law."  *Id.* (quoting *Gilmore v. Ga. Dep't of Corr.*, 144 F.4th 1246, 1258 (11th Cir. 2025) (en banc)).

Mitchell principally relies on cases involving significantly greater uses of force, characterizing Dutton's conduct as "slamm[ing] her head-first into a concrete sidewalk."  Pl.'s Resp. to Def.'s Mot. for Summ. J. 5-6, ECF No. 15.  The record, however, does not support that characterization.  Rather, the undisputed evidence reflects that Dutton pushed Mitchell in the back, causing her to fall forward onto the pavement, before immediately returning his attention to assist fellow officers with an ongoing arrest. And Mitchell has not identified a case finding similar conduct to be a Fourth Amendment seizure.  Nor does anything in the record suggest that Dutton's conduct was "so bad that case law is not needed to establish that the conduct cannot be lawful."  *Plowright*

9

*v. Miami Dade Cnty.*, 102 F.4th 1358, 1367 (11th Cir. 2024) (quoting *Jones v. Fransen*, 857 F.3d 843, 852 (11th Cir. 2017)). Because Mitchell has not shown that every reasonable officer would have understood Dutton's conduct to violate the Fourth Amendment, Dutton is entitled to qualified immunity.

## II.  State Law Claims

Mitchell's remaining claims all arise under Georgia state law. Under 28 U.S.C. § 1367(c)(3), "district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." District courts are encouraged to exercise that discretion "to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Murphy v. City of Aventura*, 383 F. App'x 915, 919 (11th. Cir. 2010) (per curiam) (quoting *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) (per curiam)). Having dismissed all federal claims, the Court declines to exercise supplemental jurisdiction over the remaining Georgia state law claims and dismisses those claims without prejudice.

CONCLUSION

For the reasons set forth above, the Court grants Dutton's motion for summary judgment (ECF No. 13) as to Mitchell's Fourth Amendment claim. Having declined to exercise supplemental

10

jurisdiction over Mitchell's state law claims, the Court dismisses those claims without prejudice.

IT IS SO ORDERED, this 27th day of July, 2026.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

11